United States District Court
Southern District of Texas
**ENTERED**
September 24, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| AARON  BROWN, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 6:20-CV-00022 |
| | § | |
| LORIE  DAVIS, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner Aaron Brown is an inmate in the Texas Department of Criminal Justice and is currently incarcerated at the Darrington Unit in Rosharon, Texas.  Proceeding *pro se*, Brown filed an original habeas corpus petition pursuant to 28 U.S.C. § 2254 on March 23, 2020.  (D.E. 1).  Brown challenges his conviction and 37-year sentence for robbery, raising claims regarding the trial court's jury instructions, along with trial counsel's failure to call witnesses during the guilt phase of the trial and failure to present mitigating evidence at the sentencing phase.  Respondent filed a motion for summary judgment, to which Brown has not responded.  (D.E. 9).  As discussed more fully below, it is respectfully recommended that Respondent's motion for summary judgment be granted and Brown's habeas corpus petition be denied.  It is further recommended that a Certificate of Appealability ("COA") be denied.

## I.    JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C. § 1331 and venue is appropriate because Brown was convicted in DeWitt County, Texas.  28 U.S.C. § 2254(a); 28 U.S.C.

§ 124(b)(5); *Wadsworth v. Johnson*, 235 F.3d 959, 961 (5th Cir. 2000).

## II.  BACKGROUND

### a.  *Petition and Claims*

In his § 2254 petition and attached memorandum, Brown first contends that the trial court violated his due process rights by failing to *sua sponte* include a full definitional instruction on the meaning of "reasonable doubt" in the jury instructions. (D.E. 1 at 6; D.E. 1-1 at 3).  Second, Brown asserts that he was denied effective assistance of counsel because trial counsel failed to call any witnesses other than Brown himself during the guilt phase of the trial.  (D.E. 1 at 6; D.E. 1-1 at 3-4).  Specifically, Brown identifies a witness named Wayne Fields that counsel should have called.  (*Id.*). Finally, Brown contends that trial counsel was ineffective for failing to present any mitigating evidence during the sentencing phase, again citing testimony that could have been given by Wayne Fields.  (D.E. 1 at 6; D.E. 1-1 at 4).

### b.  *State Court Records*

In 2017, Brown was indicted as a repeat offender for robbery, in violation of Tex. Penal Code §§ 29.02, 12.42.  (D.E. 8-12 at 7).

At trial, Mary Nava, a cashier at a convenience store, testified to the following. (D.E. 8-15 at 20-21).  While working one night, she observed a fight outside the store. (*Id.* at 21).  She saw a black man hit a white man with his fist, and the white man fell to the ground.  (*Id.* at 21-22).  While she tried to call the police, another customer went out and tried to stop the black man from leaving the scene.  (*Id.* at 22).  He ultimately did leave the scene in the vehicle both men arrived in.  (*Id.* at 23).  On cross-examination,

2

Nava testified that the customer exited the store to try to stop the man from leaving and struck him once.  (*Id.* at 26).

Steven Tyler, the man that Brown allegedly struck, testified to the following.  (*Id.* at 49-50).  On the night of the incident, he went to a bar.  (*Id.* at 52-53).  While at the bar, Brown approached him and began to speak with him.  (*Id.* at 54).  When they were finished, Brown asked for a ride home, and Tyler agreed to give him one.  (*Id.* at 56).  They left the bar and began driving north.  (*Id.* at 57).  Brown never gave him a specific address, but directed him where to go while driving.  (*Id.* at 57-58).  They stopped at a couple of places, but Brown returned to the car because he could not stay at them.  (*Id.* at 58-59).  They ended up driving out of the city and into the country.  (*Id.* at 59).  Tyler continued to ask Brown where they were going and how far it was, but Brown told him to just keep going.  (*Id.* at 60).  Brown told him to turn into Yoakum, Texas, but then they continued driving.  (*Id.*).  At this point, Tyler decided to stop, and pulled into a gas station because there was a police officer in the parking lot.  (*Id.* at 60-61).  The officer drove away, however.  (*Id.* at 61).

Tyler further testified that he told Brown that he was not going any farther, but Brown said he did not want to get out.  (*Id.* at 61).  Tyler got out and walked around to open the passenger door.  (*Id.* at 62).  When Brown got out, Tyler turned around to walk away.  He knew Brown then hit him in the back of the head due to the injuries he sustained, but he did not remember it happening.  (*Id.*).  The next thing he remembered was sitting in the parking lot and talking to the ambulance workers and police.  (*Id.* at 63).  Tyler suffered a broken clavicle, concussion, neck pain, and immobility.  (*Id.* at 64).

3

He was driven to the hospital because his car was no longer at the gas station. (*Id.* at 67). He never threatened Brown or hit him. (*Id.* at 71-72).

On cross-examination, Tyler testified that, after first speaking with Brown at the passenger door, he moved a box of beer to the back of the car. (*Id.* at 75). He did not remember where the box of beer came from. (*Id.*). On re-direct examination, Tyler testified that he moved the beer because he thought it would make Brown get out of the car. (*Id.* at 78).

Augustin Pineda, a customer at the convenience store at the time of the altercation, testified to the following. (*Id.* at 102-04). He purchased some items at the store and then walked outside when he saw a car arrive with two men arguing. (*Id.* at 104). He heard Tyler telling Brown to get out of his car, that he was not taking him to buy drugs, and that he was not driving him any farther. Tyler got out of the car and opened the passenger door, telling Brown to get out or he was going to call the police. Brown got out of the car, but then punched Tyler in the head, knocking him out. Pineda ran over and pushed Brown away, and when Brown pushed him back, Pineda punched him and Brown fell over. (*Id.*). Brown then got up, got in the driver's seat of the car, and left. (*Id.* at 104-05). Brown initially drove forwards, almost striking two employees and the store, then reversed and drove away. (*Id.* at 106-07).

On cross-examination, Pineda testified that he was outside the store when the car pulled up, but he waited outside his car because he heard the men arguing and knew a fight was going to happen. (*Id.* at 109-10).

Finally, Brown testified to the following on his own behalf. (*Id.* at 116). At night,

4

he often took walks and ministered to people.  (*Id.* at 116).  He was ministering to people

in a bar when he met Tyler.  (*Id.* at 117).  His house was three or four houses away from

the bar.  (*Id.* at 118).  He began talking to Tyler around when the bar was closing, and

Tyler began talking about his problems.  (*Id.* at 118-19).  Brown asked him for a ride

home.  (*Id.* at 119).  Tyler just kept driving, however, and they ended up in Yoakum.

(*Id.*).  He asked Tyler to stop, but Tyler kept talking about himself, so Brown decided to

just listen.  (*Id.* at 120).  Tyler stopped at a store in Yoakum and bought beer before going

to the convenience store.  (*Id.* at 121).  While driving between the two stores, Tyler told

him to get out, but Brown told him to go back where they came from.  (*Id.* at 122).  When

they arrived at the convenience store, Tyler got out, moved the beer to the back, and then

tried to open Brown's door.  Brown walked to the front of the car and tried to take a

picture of Tyler in the car.  (*Id.*).  Tyler knocked the camera, which was also Brown's

phone, out of his hands, and Brown struck him back in panic.  (*Id.* at 123).  Someone

came out of the store and struck Brown.  (*Id.* at 124).  Tyler got angry when Brown told

him he did not know where to get drugs and wanted to go home.  (*Id.*).  After being

struck by the other man, Brown got in the car to leave.  (*Id.* at 125).  He pulled forward to

avoid hitting Tyler, who was laying on the ground, and then left.  (*Id.* at 125-26).  Brown

had a busted lip and a bump on his head after being struck by the other man.  (*Id.* at 126-

27).

Brown further testified that, after leaving the store and starting to drive home, he

stopped on the side of the highway, flagged down another driver, and used that person's

phone to call his wife to come pick him up.  (*Id.* at 127).  He took Tyler's car because he

5

was afraid for his life. (*Id.* at 128). He never contacted police out of fear that he would be judged given his history. (*Id.*).

During the jury instructions, the trial court noted that the jury must find that Brown committed the offense in the indictment beyond a reasonable doubt. (D.E. 8-12 at 131). The court did not specifically define the meaning of "reasonable doubt." (*See generally id.* at 129-34). The jury found Brown guilty of robbery. (*Id.* at 135).

During the sentencing phase, Brown pleaded guilty to the enhancement paragraphs regarding his prior convictions. (D.E. 8-17 at 7). The state presented evidence from a fingerprint expert. (*Id.* at 10-17). Brown again testified on his own behalf, stating the following. (*Id.* at 20). He became a minister in 2010. (*Id.* at 21). He believed that his role was to "go out on the battlefield" and minister to people who had problems. (*Id.* at 21-22). He believed that his life changed in 2010, and his prior convictions were in the past. (*Id.* at 23). He was married and had several children who were doing well. (*Id.* at 23-25).

The jury sentenced Brown to 37 years' imprisonment. (D.E. 8-12 at 150).

The Thirteenth District Court of Appeals of Texas affirmed Brown's conviction on direct appeal. (D.E. 8-1 at 1-12). Brown attempted to file a petition for discretionary review, but the Texas Court of Criminal Appeals ("TCCA") took no action on it because it was untimely. (D.E. 8-3 at 1).

Brown next filed an application for a writ of habeas corpus in state court under Article 11.07 of the Texas Code of Criminal Procedure. (D.E. 8-22 at 46-73). In his Article 11.07 application, Brown raised the same claims as in his present petition. (*See*

6

*generally id.*).  Brown attached an affidavit from Wayne Fields, who stated the following. (*Id.* at 87).  He had known Brown all his life and received a call from Brown soon after the incident occurred.  Fields went to see Brown, who told him that he had been in Yoakum with another man, but the man got mad when Brown could not find a house. The other guy wanted Brown to get out of his car, so he got three others to attack Brown. When Fields saw Brown, his face was swollen and his lip was busted.  (*Id.*).

The trial court did not enter any orders within the 35-day time limit of when Brown filed his Article 11.07 application, which constituted a finding that there were no previously unresolved facts material to the legality of Brown's confinement and that his application had been overruled by operation of law.  (*Id.* at 97); Tex. Code Crim. P. art. 11.07, Sec. 2(c).  The TCCA denied Brown's Article 11.07 application without written order.  (D.E. 8-19 at 1).

## III.  DISCUSSION

### a.  *Standard of Review*

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a state prisoner may not obtain relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ if the

7

state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court on a question of law or if the state court decides a case differently than the Court on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.  *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000).  Although "unreasonable" is difficult to define, the Supreme Court noted that it is an objective, rather than subjective, standard and emphasized that there is a critical difference between an unreasonable application of federal law and a merely "incorrect" or "erroneous" application of federal law.  *Neal v. Puckett*, 239 F.3d 683, 687 (5th Cir. 2001) (citing *Williams*, 120 S.Ct. at 1522-1523).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  A federal habeas court must determine what theories or arguments supported, or could have supported, the state court's decision.  Then it must ask whether it is possible that fair-minded jurists could disagree that the arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  *Harrington*, 562 U.S. at 102.  Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.  *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)).

The standard is very difficult to meet.  "As amended by AEDPA, § 2254(d) stops

8

short of imposing a complete bar on federal court litigation of claims already rejected in state proceedings. . . . It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther."  *Id.* at 102.  "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.* at 103.

If a decision by a state court is silent as to the reasons for the refusal, a federal habeas court can "look through" the decision and evaluate the last reasoned state court decision.  *Bledsue v. Johnson*, 188 F.3d 250, 256 (5th Cir. 1999).  A state court's factual findings are presumed to be correct and a petitioner has the burden of rebutting the presumption with clear and convincing evidence.  *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citations omitted).  This deference extends not only to express findings of fact, but to the implicit findings of the state court.  *Id.*  In addition, "where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."  *Harrington*, 562 U.S. at 98.

b.   *Jury Instructions*

In the motion for summary judgment, Respondent first argues that Brown has not established that the state court's denial of his claim regarding the lack of a definitional instruction on the meaning of "reasonable doubt" was unreasonable.  (D.E. 9 at 9-11).  Respondent argues that Brown has not shown that the trial was rendered fundamentally

9

unfair by the lack of an instruction or that it substantially influenced the jury's verdict. (*Id.* at 10).   Respondents contend that Texas law does not require an instruction on the definition of reasonable doubt and that federal habeas review does not extend to a determination of whether the state court properly applied state law.   (*Id.* at 10-11).

Brown has not responded.

Federal habeas courts "do not sit as a 'super' state supreme court in a habeas proceeding to review errors under state law." *Menzies v. Procunier*, 743 F.2d 281, 288 (5th Cir. 1984).   Instead, when reviewing an alleged error at trial, the question is whether the petitioner was denied a fundamentally fair trial under the Constitution.   *Id.*   This is a difficult standard to meet, as even the erroneous admission of prejudicial testimony does not warrant habeas relief unless it was a "crucial, critical, [and] highly significant factor" in the trial.   *Skillern v. Estelle*, 720 F.2d 839, 852 (5th Cir. 1983).   Similarly, a constitutional trial error that was harmless does not warrant habeas review.   *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993).   An error is harmless unless it "had substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 637.

Texas law does not require a trial judge to give an instruction on the meaning of reasonable doubt.   *Paulson v. State*, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000).   The United States Constitution also does not require such an instruction.   *Victor v. Nebraska*, 511 U.S. 1, 5 (1994).   Rather, the trial judge need merely instruct the jury that the defendant's guilt must be proved beyond a reasonable doubt.   *Id.*

Here, Brown has not established that the state court's denial of this claim was contrary to, or an unreasonable application of, clearly established federal law because

federal law does not require an instruction on the definition of reasonable doubt. To the extent that Brown's argument is that the state court incorrectly applied state law, it is not the role of a federal habeas court to review errors under state law. *Menzies*, 743 F.2d at 288. Instead, the applicable question is whether Brown was denied a fundamentally fair trial under the Constitution because of the lack of an instruction on the definition of reasonable doubt. *Id.* Brown has not shown that the lack of an instruction violated his constitutional rights where the Supreme Court has held that the Constitution does not require an instruction on the definition of reasonable doubt. *Victor*, 511 U.S. at 5. The trial court merely needed to instruct the jury that Brown must be found guilty beyond a reasonable doubt, which it did. (D.E. 8-12 at 131).

      c.   *Ineffective Assistance of Trial Counsel*

Respondent next argues that Brown has not established either that trial counsel performed deficiently or that he was prejudiced by counsel's performance. (D.E. 9 at 14-18). First, as to Brown's claim that counsel was ineffective during the guilt phase of the trial, Respondent argues that Brown has not indicated what defense or evidence counsel could have presented. (*Id.* at 14-15). Respondent argues that the Fields affidavit, even if accepted as true, does not demonstrate that counsel failed to raise a defense because Fields's understanding of what happened was not based on personal knowledge, but rather what Brown had told him. (*Id.* at 15). Similarly, as to Brown's claim of ineffective assistance at the sentencing stage, Respondent argues that Fields's statement does not include any mitigating information about Brown's background. (*Id.* at 16-17). Finally, as to prejudice, Respondent argues that Brown has not established that the result

11

of the trial or sentencing would be different given the entirety of the evidence presented at trial.  (*Id.* at 17-18).

Brown has not responded.

To prevail on an ineffective assistance of counsel claim, a petitioner must meet the two-prong test set out in *Strickland.*  He must show both that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defense.  *Strickland*, 466 U.S. at 687.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable.  *Id.* at 687-88.  A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.  *Id.* at 697.

Judicial scrutiny of counsel's performance must be highly deferential and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *Id.* at 689.  A court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.  *Id.*  A petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.  *Id.*  The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.  *Id.* at 690.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  *Harrington*, 562 U.S. at 105.  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The

12

question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

To show prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 695.

Counsel has a duty to make a reasonable investigation of defendant's case or to make a reasonable decision that an investigation is unnecessary. *Ransom v. Johnson*, 126 F.3d 716, 723 (5th Cir. 1997). In raising a failure-to-investigate claim, a defendant must specifically allege what the investigation would have found and how it would have altered the outcome. *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005). The fact that an investigation would have uncovered admissible evidence is insufficient to show prejudice. *Gray v. Lucas*, 677 F.2d 1086, 1093 (5th Cir. 1982). Evidence that could have been uncovered must be sufficient to undermine confidence in the outcome of the trial. *United States v. Lewis*, 786 F.2d 1278, 1283 (5th Cir. 1986).

"[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009).

Here, Brown has not established that the state court's conclusion that counsel's performance was not deficient, and that he was not prejudiced by an deficiency, was contrary to, or an unreasonable application of, clearly established federal law because he

13

has not shown that counsel's actions were unreasonable or that there was a reasonable possibility that the result of the trial would have been different.  The only additional evidence or testimony that Brown claims counsel could have uncovered or presented, at either the guilt or sentencing stage, is Fields's potential testimony.  *Miller*, 420 F.3d at 361 (noting that a petitioner must specifically allege what additional evidence an investigation would have uncovered).  However, Fields's potential testimony, even assuming that he would have testified consistent with his affidavit and was available at the time of trial, is not sufficient to undermine confidence in the outcome of the trial.  *See Lewis*, 786 F.2d at 1283.  Fields's statement indicates that he had no personal knowledge of the incident, but rather only knew what Brown told him.  (D.E. 8-22 at 87).  Brown testified on his own behalf regarding his version of events, so Fields's testimony, even if admissible, would have been merely cumulative.  Moreover, as to presenting testimony from Fields as a character witness at the sentencing phase, Fields's affidavit contains no details regarding what testimony he would have given regarding Brown's character.  (*See id.*).  Fields merely stated that he had known Brown all of his life, but gave no other details of their relationship.  (*Id.*).

For the same reason, because Fields's affidavit contains no new facts about either the incident or Brown's character, Brown has also failed to show that he was prejudiced by counsel's failure to present his testimony.  *See Strickland*, 466 U.S. at 695.  Accordingly, because Brown has failed to establish that counsel performed deficiently or that he was prejudiced by any deficiency, he has not met his burden to show that the state court's rejection of his ineffective-assistance claims was contrary to, or an unreasonable

14

application of, clearly established federal law.

## IV.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A).  Although Brown has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (stating that a district court may *sua sponte* rule on a COA).

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  *Slack v. Daniel*, 529 U.S. 473, 484 (2000).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 327.

Here, reasonable jurists would not find it debatable that Brown's claims lack merit.  Therefore it is further recommended that any request for a COA be denied.

## V.   RECOMMENDATION

Based on the foregoing, it is respectfully recommended that Respondent's motion for summary judgment (D.E. 9) be GRANTED and Brown's § 2254 petition be DENIED. In addition, it is further recommended that any request for a Certificate of Appealability be DENIED.

Respectfully submitted this 24th day of September, 2020.

Julie K. Hampton
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).