United States District Court
Southern District of Texas
**ENTERED**
March 30, 2021
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## VICTORIA DIVISION

| | | |
|---|---|---|
| **AARON BROWN,** | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 6:20-cv-00022 |
| | § | |
| **LORIE DAVIS,** | § | |
| | § | |
| Respondent. | § | |

### ORDER ACCEPTING MEMORANDUM AND RECOMMENDATION

Pending before the Court is the Memorandum and Recommendation ("M&R") signed by Magistrate Judge Julie K. Hampton on September 24, 2020. (Dkt. No. 19). In the M&R, Magistrate Judge Hampton recommended granting Respondent Lorie Davis's ("Davis") Motion for Summary Judgment and dismissing Petitioner Aaron Brown's ("Brown") Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254. (*Id.* at 1).

Brown was provided proper notice and the opportunity to object to the proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1); General Order No. 2002-13, art. IV. He filed timely objections. (Dkt. No. 27). As a result, the Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C).

The Court has conducted *de novo* review of the M&R, the objections, the record, and the applicable law. After careful review, the M&R is **ACCEPTED** as this Court's Memorandum and Order. The Motion for Summary Judgment is **GRANTED**. Accordingly, the Court **DISMISSES** Brown's Petition and a Certificate of Appealability is **DENIED**.

**I.      BACKGROUND**

Brown was indicted for robbery in violation of Texas Penal Code §§ 29.02 and 12.42, with a habitual offender enhancement for his prior convictions of delivery of a controlled substance and aggravated assault.  (Dkt. No. 8-12 at 7, 150–51).  Brown pleaded not guilty.  (*See id.* at 150).  At least four people testified at trial: Steven Tyler, the man whom Brown attacked and whose car Brown took and drove away from the scene of the altercation; Mary Nava, a cashier at a convenience store who witnessed the altercation; Augustin Pineda, a customer at the store who tried to help Tyler during the attack; and Brown himself, who testified that Tyler's actions initiated the altercation and that Brown was acting only in self-defense.  (Dkt. No. 8-15 at 20–21, 49–50, 102–04, 116–27); (*see* Dkt. No. 19 at 2–6); (*see also* Dkt. No. 8-16 at 15).  After the trial, a jury found Brown guilty of robbery.  (Dkt. No. 8-12 at 135).  During the sentencing phase, Brown pleaded guilty to the enhancement paragraphs regarding his prior convictions.  (Dkt. No. 8-17 at 7).  The jury then sentenced Brown to a thirty-seven-year prison term.  (Dkt. No. 8-12 at 150).

Brown appealed, alleging insufficient evidence and an error in the jury instructions.  The Thirteenth Court of Appeals affirmed the conviction and sentence on December 19, 2018.  (Dkt. Nos. 8-1, 8-2); *Brown v. State*, No. 13-17-00339-CR, 2018 WL 6626731 (Tex. App. – Corpus Christi-Edinburg, Dec. 19, 2018, no pet.).  And despite being granted an extension of time to file a Petition for Discretionary Review, Brown failed to timely do so.  (Dkt. Nos. 8-3, 8-9, 8-10, 8-11); (*see also* Dkt. No. 19 at 6).

On December 2, 2019, Brown applied to the Texas Court of Criminal Appeals ("TCCA") for a writ of habeas corpus.  (Dkt. No. 8-22 at 46–73).  In the Application he claimed that (1) the trial court erred in not defining "reasonable doubt" in the jury charge and (2) his counsel provided ineffective assistance by, first, failing to present "any defense" during the trial, and second, failing to call allegedly consequential witness testimony during the trial and sentencing phase.  (*Id.*).  For

2

support, Brown attached an affidavit from an individual named Wayne Fields ("Fields") who testified that Brown called him at some point soon after the alleged robbery and told Fields that another man along with three others attacked Brown. (*Id.* at 87). Fields further testified that the next time he saw Brown, Brown's face was swollen and his lip was bleeding. (*Id.*). In light of Fields's affidavit testimony, Brown argued that his counsel did not "subpoena or interview" Fields to the detriment of Brown's defense. (*Id.* at 53). The TCCA denied Brown's application without written order on February 19, 2020. (Dkt. No. 8-19).

On August 14, 2019, Brown filed the instant Petition before this Court in which he restates the two claims from his unsuccessful state application. (Dkt. No. 1 at 6; Dkt. No. 1-1; Dkt. No. 8-22 at 46–73); (*see also* Dkt. No. 19 at 6). With respect to the ineffective assistance of counsel claim, Brown again highlights Brown's counsel's failure to call Fields—whose testimony Brown argues could have tipped the scales—at both the trial and the sentencing phase. (Dkt. No. 1 at 6; Dkt. No. 1-1 at 3–4); (*see also* Dkt. No. 27 at 11). Davis filed a Motion for Summary Judgment with Brief in Support on June 24, 2020. (Dkt. No. 9). Brown did not respond. (*See* Dkt. No. 19 at 1). The action was reassigned to this Court on July 6, 2020, (Dkt. No. 10), and was referred to Magistrate Judge Hampton on July 23, 2020, (Dkt. No. 14). On September 24, 2020, Magistrate Judge Hampton recommended denying Brown's Petition. (Dkt. No. 19). Brown timely filed objections on November 23, 2020.[1] (Dkt. No. 27).

## II.   LEGAL STANDARDS

When objections are filed to part of a magistrate judge's recommendation, a district court must conduct a *de novo* review. 28 U.S.C. § 636(b)(1)(C). The court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge," and

---

[1] Because of orders granting Brown an extension of time to file objections, Brown had until December 15, 2020 to object. (Dkt. Nos. 21, 25).

3

"may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.* Relevant here, "[a] document filed *pro se* is to be liberally construed," and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (internal quotation omitted).

### A.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A material fact is one that might affect the outcome of the suit under governing law," and "a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018) (quotations omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2253, 91 L.Ed.2d 265 (1986). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*per curiam*)).

If the movant meets this burden, the nonmovant must then come forward with specific facts showing there is a genuine issue for trial. FED. R. CIV. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The nonmovant must "go beyond the pleadings and by [the nonmovant's] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d

527, 536 (5th Cir. 2015) (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)). "The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim." *Johnson v. Deep E. Texas Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004). "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S. Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The nonmovant's burden "will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little*, 37 F.3d at 1075). Important here, hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence. FED. R. CIV. P. 56(c)(2); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987). For evidence to be admitted, the materials "need only be *capable* of being 'presented in a form that would be admissible in evidence.'" *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (emphasis in original) (quoting FED. R. CIV. P. 56(c)(2)).

In reviewing a motion for summary judgment, the district court must view the evidence in a light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). This rule means that factual controversies are to be resolved in the nonmovant's favor, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. The Court is not obligated to search the record on the nonmovant's behalf for evidence which may raise a fact issue. *Topalian v. Ehrman*, 954 F.2d 1125, 1137 n.30 (5th Cir. 1992).

### B. AEDPA STANDARD OF REVIEW

If a state prisoner has presented his federal constitutional claims to the state courts in a procedurally proper manner and the state courts have adjudicated their merits, the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides for a deferential federal review. "[T]ime and again," the Supreme Court "has instructed that AEDPA, by setting forth necessary predicates before state-court judgments may be set aside, 'erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.'" *White v. Wheeler*, 577 U.S. 73, 76–77, 136 S.Ct. 456, 460, 193 L.Ed.2d 384 (2015) (quoting *Burt v. Titlow*, 571 U.S. 12, 19, 134 S.Ct. 10, 16, 187 L.Ed.2d 348 (2013)). Under AEDPA's rigorous standard of review, a petitioner may secure federal habeas relief only after showing that the state court's rejection of his claim was either (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2).

Petitioners arguing legal error in state court decisions must comply with Section 2254(d)(1)'s "contrary to" and "unreasonable application" clauses. *See Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002). "A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Gray v. Epps*, 616 F.3d 436, 439 (5th Cir. 2010) (citations omitted). To constitute an "unreasonable application of" clearly established federal law, a state court's holding "must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods v. Donald*, 575 U.S. 312, 316, 135 S.Ct. 1372, 1376, 191 L.Ed.2d 464 (2015) (quoting *White v. Woodall*, 572 U.S. 415, 419, 134 S.Ct. 1697, 1702, 152 L.Ed.2d (2014)). In

contrast to "ordinary error correction through appeal," AEDPA review exists only to "guard against extreme malfunctions in the state criminal justice systems." *Id.* (quotation omitted). A petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woodall*, 572 U.S. at 419–20, 134 S.Ct. at 1702 (quoting *Harrington v. Richter*, 562 U.S. 86, 103, 131 S.Ct. 770, 786–87, 178 L.Ed.2d 624 (2011)). "If this standard is difficult to meet, that is because it was meant to be." *Harrington*, 562 U.S. at 102, 131 S.Ct. at 786.

A petitioner challenging the factual basis for a state decision must show that it was an "unreasonable determination of the facts in light of the evidence." 28 U.S.C. § 2254(d)(2). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301, 130 S.Ct. 841, 849, 175 L.Ed.2d 738 (2010). State court findings are "presumed to be correct" unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Generally, federal courts presume that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 11 S.Ct. 2590, 2594, 115 L.Ed.2d 706 (1991); *see also Jackson v. Johnson*, 194 F.3d 641, 651 (5th Cir. 1999) ("When faced with a silent or ambiguous state habeas decision, the federal court should 'look through' to the last clear state decision on the matter."). Thus, when the TCCA summarily rejects a prisoner's claim, federal courts can "ignore—and hence, look through—an unexplained state court denial and evaluate the last reasoned state court decision." *Bledsue v. Johnson*, 188 F.3d 250, 256 (5th Cir.

1999). AEDPA requires federal courts to defer to a state court's summary decision to deny relief. *See Harrington*, 562 U.S. at 99, 131 S.Ct. at 784–85; *see also Johnson v. Williams*, 568 U.S. 289, 299, 133 S.Ct. 1088, 1095, 185 L.Ed.2d 105 (2013) (observing that AEDPA deference is proper even in "instances in which a state court may simply regard a claim as too insubstantial to merit discussion").

With the foregoing standards in mind, the Court now reviews the M&R and Brown's objections.

### III.  REVIEW OF THE OBJECTIONS

In his Petition, Brown raised the following two grounds for habeas relief:

1. The trial court erred in failing to *sua sponte* include a full definition for "reasonable doubt" in the jury charge.

2. His counsel provided ineffective assistance for failing to present any defense or evidence during the trial and any mitigating evidence during the sentencing phase.

(Dkt. No. 1 at 6–9; Dkt. No. 1-1). Magistrate Judge Hampton recommended dismissing all of Brown's claims. (Dkt. No. 19). Brown objects, arguing that the recommendations with respect to all his claims were in error. (Dkt. No. 27). The Court now turns to each of the M&R's dispositions and Brown's corresponding objections below.

#### A.  JURY CHARGE CLAIM

With respect to the first ground—the jury charge claim based on the trial court's apparent failure to *sua sponte* include a definition of "reasonable doubt" in the jury instructions—Magistrate Judge Hampton recommended dismissal because Brown failed to establish that the state court's denial of this claim was contrary to, or an unreasonable application of, clearly established federal law. Magistrate Judge Hampton held as such because federal law does not require an instruction on the definition of "reasonable doubt." (Dkt. No. 19 at 10–11). Moreover, Magistrate Judge

Hampton found that Brown had not shown that the lack of such a specific definition violated his constitutional rights because the Supreme Court has ruled that the Constitution does not require an instruction on the definition of "reasonable doubt." (*Id.* at 11). Magistrate Judge Hampton also noted that Texas law itself does not even require a trial judge to give an instruction on the meaning of "reasonable doubt." (*Id.* at 10).

Brown objects to this recommendation, arguing that the trial judge was required to instruct the jury "on what constitutes 'reasonable doubt in 'every element' of the offense charged." (Dkt. No. 27 at 6). The Court disagrees.

The United States Constitution does not require a trial judge to define "reasonable doubt" in a jury charge. *See Victor v. Nebraska*, 511 U.S. 1, 5, 114 S.Ct. 1239, 1243, 127 L.Ed.2d 583 (1994) ("The beyond a reasonable doubt standard is a requirement of due process, but the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course."). "[T]aken as a whole, the instructions must correctly convey *the concept* of reasonable doubt to the jury." *Id.* (emphasis added) (alterations omitted) (quoting *Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954)). Here, it is undisputed that the trial court instructed the jury to determine whether Brown's guilt was proven "beyond a reasonable doubt." (Dkt. No. 8-12 at 131). This instruction fulfills the Constitution's mandate. *See Victor*, 511 U.S. at 5, 114 S.Ct. at 1243 (citing *Jackson v. Virginia*, 443 U.S. 307, 320, n.14, 99 S.Ct. 2781, 2789, n.14, 61 L.Ed.2d 560 (1979)). Thus, the Court agrees with Magistrate Judge Hampton and finds no merit in Brown's first claim.

    **B.**    **INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM**

Next, Magistrate Judge Hampton recommended dismissal of the second ground—the ineffective assistance of counsel claim—because Brown failed to establish that the state court's conclusion was contrary to, or an unreasonable application of, clearly established federal law.

9

Magistrate Judge Hampton found that Brown failed to show that counsel's actions were unreasonable—or even a reasonable possibility that the result of the trial would have been different—since the only additional evidence or testimony that Brown claims his counsel could have uncovered or presented is Fields's potential testimony. (Dkt. No. 19 at 13–14). As Magistrate Judge Hampton noted, Fields's potential testimony "is not sufficient to undermine confidence in the outcome of the trial" because the testimony indicates that Fields "had no personal knowledge of the incident" and testified merely as to what Brown already "told him." (*Id.* at 14 (citing Dkt. No. 8-22 at 87)). Brown already had the opportunity to testify—which he did—and Fields's affidavit, even if admissible, "would have been merely cumulative." (*Id.*). And with regard to presenting the Fields affidavit at the sentencing phase, Magistrate Judge Hampton wrote that the testimony "contains no details" on Brown's character that could be relevant in sentencing. (*Id.*). Lastly, Magistrate Judge Hampton concluded that because the Fields affidavit contains no new facts about the altercation or Brown's character, Brown "failed to show that he was prejudiced by counsel's failure to present his testimony." (*Id.*).

Brown objects to Magistrate Judge Hampton's findings arguing that his trial counsel failed to call Fields as a witness and "advance the defensive strategy of 'defense of necessity'" in the trial. (Dkt. No. 27 at 11). He further states that Magistrate Judge Hampton's recommendations are in error because Fields could testify to what he "knew" and "observed" since, apparently, Fields "directly observed" Brown "shortly after the incident" and could thus "offer direct testimony." (*Id.* at 11–12). The Court disagrees.

An ineffective assistance of counsel claim is properly analyzed under the two-prong test set forth in *Strickland*. *See United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356,

371, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). "The standard for judging counsel's representation is a most deferential one." *Harrington*, 562 U.S. at 105, 131 S.Ct. at 788. To prevail on such a claim, a petitioner must demonstrate that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Strickland,* at 466 U.S. at 687, 104 S.Ct. at 2064. Regarding the first prong, to demonstrate deficient performance, the petitioner must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. at 2065. The core question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Id.* at 690, 104 S.Ct. at 2066. With respect to the second prong, to prove that the petitioner was prejudiced, he must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687, 104 S.Ct. at 2064. This requirement means that the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112, 131 S.Ct. at 792. If the petitioner fails to prove one prong, it is not necessary to analyze the other. *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994).

In the context of Section 2254 petitions, an ineffective assistance of counsel claim must be analyzed under *both* the *Strickland* and Section 2254(d) standards, which makes the petitioner's burden "all the more difficult." *Harrington*, 562 U.S. at 105, 131 S.Ct. at 788. As both of these standards are highly deferential, when the two apply in tandem, judicial review is "doubly" so. *Id.* (internal quotation omitted). In such a case, a federal habeas court asks not whether defense counsel's performance fell below *Strickland*'s standard, but whether the state court's application

11

of the standard was unreasonable. *Id.* at 101, 131 S.Ct. at 785; *see also Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 1939, 167 L.Ed.2d 836 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."). Put differently, "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 105. As such, relief is given only when the petitioner shows there is no reasonable argument that counsel's performance satisfied the *Strickland* standards. *See Harrington*, 562 U.S. at 103–105; 131 S.Ct. at 786–88; *see also McCoskey v. Thaler*, 478 F. App'x 143, 152 (5th Cir. 2012). And since the *Strickland* standard is a general one, "a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009).

Here, a review of the record undermines Brown's objections. To the extent Brown wanted his attorney to argue that Brown was acting in self-defense against Tyler's alleged attack, trial counsel indeed attempted to do so, with Brown testifying as to his version of events during the incident. (Dkt. No. 8-15 at 116–29). Brown's trial counsel in his closing arguments even tried to persuade the jury that Brown was merely defending himself against Tyler. (Dkt. No. 8-16 at 19–20). The postulation of Brown's trial counsel that Brown was merely defending himself from an attack was, essentially, a focal point of the trial, as the prosecutor himself attempted—successfully, it seems—to convince the jury that Brown was the aggressor in the altercation. *See* (*Id.* at 7–10, 14). Second, although Brown characterizes Fields's testimony as demonstrating "direct knowledge" of what happened during that night through Fields's "observations," Brown's own words prove to the contrary. Brown states that Fields "observed" Brown "*after* the incident." (Dkt. No. 27 at 11) (emphasis added). This timing makes sense given the contents of Fields's

affidavit. Fields testifies that he *received a call* from Brown who told him about the incident that had just happened between Brown and Tyler. (Dkt. No. 8-22 at 87). Plainly, everything that Fields "knows" about the altercation is only from what Brown told him. And crucially, the fact that Fields saw Brown's bleeding lip and swollen face does not establish whether Brown or Tyler instigated any altercation. This Court therefore agrees with Magistrate Judge Hampton and concludes that there is no merit in Brown's ineffective assistance of counsel claim when analyzed under both the *Strickland* and Section 2254(d) standards.

## IV.  CONCLUSION

Based on the foregoing, the Court **ACCEPTS** the M&R in its entirety as the opinion of the Court and **GRANTS** Davis's Motion for Summary Judgment. Accordingly, the Court **DISMISSES** Brown's petition pursuant to 28 U.S.C. § 2254. Further, a Certificate of Appealability is **DENIED**.

This is a **FINAL JUDGMENT.**

SIGNED this March 30, 2021.

_____
**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**